# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| APP-ORDER LLC, | |
| Plaintiff, | Case No.: 2:24-cv-01480-GMN-DJA |
| vs. | **ORDER GRANTING MOTION TO DISMISS** |
| HAROLD REYNOLDS, | |
| Defendant. | |

Pending before the Court is the Motion to Dismiss, (ECF No. 24), filed by Defendant Harold C. Reynolds.  Plaintiff App-Order LLC filed a Response, (ECF No. 36), and Defendant filed a Reply, (ECF No. 45).

Also pending before the Court is the Motion to Compel Arbitration, (ECF No. 4), filed by Plaintiff.  Defendant filed a Response, (ECF No. 25), and Plaintiff filed a Reply, (ECF No. 38).  For the reasons described below, the Court **GRANTS** the Motion to Dismiss and **DENIES** the Motion to Compel Arbitration as moot.

## I.    BACKGROUND

Plaintiff Zorts Sports is a Nevada-based company that has developed several web-based and handheld phone applications over the last several years. (Compl. ¶ 7, ECF No. 1).  The Complaint alleges that in the summer of 2022, Defendant Harold Reynolds, a former MLB player and current MLB network employee, was introduced to Plaintiff by his brother. (*Id.* ¶¶ 3, 11).  Defendant expressed interest in working with Plaintiff to develop a youth sports application, promising to use his MLB connections to promote it. (*Id.* ¶¶ 14–17).

Plaintiff agreed to create a mock-up of the application, which would connect youth baseball players with colleges and professional teams. (*Id.* ¶¶ 16, 18).  The collaboration involved several meetings, including a Zoom call in June of 2022, during which Defendant

Page 1 of 11

engaged with Plaintiff's Nevada-based engineering team. (*Id.* ¶¶ 22–24). By August 2022, Plaintiff had spent significant resources developing the application while Defendant prepared tutorial videos describing how to use the application. (*Id.* ¶ 34). Plaintiff did a presentation to Defendant in August 2022 at Defendant's home. (*Id.* ¶ 37).

After weeks of discussion, Plaintiff and Defendant formalized their partnership by executing a Joint Venture Agreement ("JV Agreement") between Plaintiff and HR4, Defendant's company. (*Id.* ¶ 41). Defendant signed the JV agreement on behalf of HR4. (*Id.* ¶ 42). The JV Agreement provided that Nevada law controlled any conflict related to the JV agreement, that the parties would mandatorily arbitrate any dispute arising from the contract, and that litigation necessary to enforce the JV agreement's terms would occur in courts located in Clark County, Nevada.

In September 2022, Plaintiff presented the application to MLB executives. (*Id.* ¶ 64). Defendant later met with Elysian Park Ventures and Field Level, competitors to the joint venture, without informing Plaintiff. (*Id.* ¶¶ 70–74). In December 2022, Defendant and Plaintiff were scheduled to meet with MLB representatives in San Diego, California. (*Id.* ¶ 85). Defendant introduced a representative from Field Level to the joint venture's pitch, causing confusion and leading to a failed presentation. (*Id.* ¶¶ 87–97). Defendant assured Plaintiff that Field Level was a partner, prompting Plaintiff to present the application again, exposing Plaintiff's trade secrets. (*Id.* ¶¶ 100–111). Despite positive feedback from MLB, Defendant later informed Plaintiff that MLB would only work with Field Level, not the joint venture. (*Id.* ¶¶ 129–134). This revelation led to a deadlock between Plaintiff and HR4, with Plaintiff initiating arbitration proceedings. (*Id.* ¶¶ 141–147). During the course of arbitration, Defendant argued that he was not subject to the arbitration provision in the JV Agreement. (*Id.* ¶ 148). The Arbitrator determined that a court of competent jurisdiction must resolve whether Defendant is subject to the arbitration provision of the JV Agreement. (*Id.* ¶ 149).

Plaintiff subsequently brought this case against Defendant in the District of Nevada. (*See generally* Compl.). Plaintiff now moves to compel Defendant to arbitration, and Defendant moves to dismiss this case for lack of personal jurisdiction and failure to state a claim. (*See generally* Mot. to Compel Arbitration, ECF Nos. 4, 6); (*See generally* Mot. Dismiss ("MTD"), ECF No. 23).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). The party asserting the existence of jurisdiction bears the burden of establishing it. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "This prima facie standard 'is not toothless,' however; [plaintiff] 'cannot simply rest on the bare allegations of its complaint.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (quoting *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)).

In reviewing a motion, the court accepts "as true all uncontroverted allegations in the complaint." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). If the defendant comes forward with a "contradictory affidavit, the plaintiff cannot simply rest on the bare allegations of its complaint." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (internal citation and quotations omitted). However, "[i]f both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* NRS 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meye*r, 311 U.S. 457, 463 (1940)).  Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)).  Specific jurisdiction exists where claims "arise[ ] out of" or "relate[ ] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.*

## III.    DISCUSSION

Plaintiff moves to compel arbitration, while Defendant moves to dismiss Plaintiff's claims for lack of personal jurisdiction and for failure to state a claim. (*See generally* Mot. Compel Arbitration); (*See generally* MTD).  Because "[t]he district court must have personal jurisdiction over each individual third-party entity before compelling them to arbitrate," the Court first considers whether it has personal jurisdiction over Defendant. *See In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 420–31 (2007)) ("[A] federal court generally may not rule on the merits of

a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction).").

### A. Specific Jurisdiction

Plaintiff alleges that the Court has specific jurisdiction over Defendant. (Compl. ¶ 5).  It asserts that Defendant has sufficiently invoked the benefits and protections of Nevada law such that it is reasonable to burden him with litigation in Nevada. (*Id.*).

Specific jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  Specific jurisdiction must arise out of "contacts that the 'defendant himself' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 475 (1985)).

Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> 1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.*  If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.*  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*

1    In evaluating the first prong, the Ninth Circuit typically distinguishes between cases

2    sounding in contract and those sounding in tort. *Id.*  In contract actions, the inquiry considers

3    whether a defendant "purposefully avails itself of the privilege of conducting activities or

4    consummates a transaction in the forum, focusing on activities such as delivering goods or

5    executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

6    1199, 1206 (9th Cir. 2006) (cleaned up).  In tort cases, the inquiry assesses whether the

7    defendant "purposefully directs his activities at the forum state." *Id.* (cleaned up).  The parties

8    disagree about which test applies here: while Plaintiff asserts that it only brings tort claims and

9    thus the purposeful direction test applies, Defendant claims that both tests are relevant because

10   Plaintiff asserts claims sounding in both contract and tort. (MTD Resp. 12:9–10, ECF No. 36);

11   (MTD Reply 2:18–19, ECF No. 45).

12   Rather than imposing a "rigid dividing line" between contract and tort cases, the Ninth

13   Circuit has highlighted that both "purposeful availment and purposeful direction ask whether

14   defendants have voluntarily derived some benefit from their interstate activities such that they

15   will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated

16   contacts." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023)

17   (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d

18   1101, 1107 (9th Cir. 2020)).  Thus, "courts should comprehensively evaluate the extent of the

19   defendant's contacts with the forum state and those contacts' relationship to the plaintiffs'

20   claims—which may mean looking at both purposeful availment and purposeful direction."

21   *Davis*, 71 F.4th at 1162.  Such comprehensive analysis is particularly appropriate where, as

22   here, a plaintiff brings contract and tort claims.[1]  The Court accordingly considers both

23   purposeful availment and purposeful direction.

24   _____

25   [1] Plaintiff brings the following claims: (1) Breach of Fiduciary Duty, (2) Negligent Misrepresentation, (3)
Tortious Interference with Contractual Relationship, (4) Tortious Interference with Prospective Economic
Advantage, (5) Alter Ego, (6) Declaratory Relief that Zorts Owns all of the Intellectual Property Related to My

### 1. Purposeful Availment

To establish purposeful availment, a court looks at "a defendant's 'entire course of dealing' with the forum state– 'not solely the particular contract or tortious conduct giving rise to [a plaintiff's] claim.'" *Id.* at 1163 (quoting *Glob. Commodities*, 972 F.3d at 1108). It exists where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," and in return "submit[s] to the burdens of litigation" in the State. *Schwarzenegger*, 374 F.3d at 802 (cleaned up). Jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Indus. Co. v. Sup. Ct. of California*, 480 U.S. 102, 109 (1987) (emphasis in original). Thus, rather than the plaintiff's contacts with the forum or the defendant's contacts with the plaintiff, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285.

The Court finds that Defendant's contacts with Nevada are not sufficient for the Court to find that he availed himself of Nevada. Plaintiff argues that in the three months prior to signing the JV Agreement, Defendant's virtual dealings with Plaintiff in his individual capacity were sufficient to establish specific jurisdiction. (Resp. 14 n.5). But during that three-month period, Defendant was never physically present in Nevada. (Reynolds Decl. ¶¶ 19–21, Ex. A to MTD, ECF No. 23-1). That he was not physically in Nevada is not decisive, but it does weigh against a finding of purposeful availment. *See Coast Equities, LLC v. Right Buy Properties, LLC*, 701

---

Pro Day. It is undisputed that the first four claims are torts claims. Alter ego is not a standalone claim. *See* NRS 78.747. The Court therefore disregards it for the purposes of this analysis. But Plaintiff's claim for declaratory relief depends on the existence of the contract between Plaintiff and HR4. It is therefore a claim sounding in contract. *See Picot*, 780 F.3d at 1212 ("A claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort.") (citation omitted). Plaintiff therefore brings claims sounding in both tort and contract against Defendant.

F.3d App'x 611, 613 (9th Cir. 2017) ("The contract negotiations occurred only by phone and e-mail, and we have held that '[t]he making of telephone calls and the sending of letters to the forum state [is] legally insufficient to enable the court to exercise personal jurisdiction over the non-resident defendant.'") (quoting *Peterson v. Kennedy*, 772 F.2d 1244, 1262 (9th Cir. 1985)). Further, nothing in the Complaint suggests that Defendant intentionally reached into Nevada to form a relationship with Plaintiff. Rather, it appears that the formation of Defendant's relationship with this Nevada-based corporation was a "random, fortuitous, or attenuated" contact as evidenced by the fact that Defendant met Plaintiff's managers through his brother. (Compl. ¶ 11); *see Glob. Commodities*, 972 F.3d at 1107 (quoting *Burger King*, 471 U.S. at 474–75). And the fact that Defendant had knowledge that Plaintiff would be acting in Nevada during their relationship is not grounds to establish specific jurisdiction. This argument would mistakenly "allow[ ] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 1115. But the Court's inquiry is limited to examining contacts that "proximately result from actions by the defendant himself." *Burger King*, 471 U.S. at 475. In sum, Plaintiff's allegations about the period prior to the signing of the JV Agreement do not establish the existence of specific jurisdiction over Defendant.

Turning now to the relationship arising out of the contract at issue, the allegations are similarly insufficient to establish specific jurisdiction over Defendant. First, the Court recognizes that Defendant is an officer of HR4, the party bound to the contract with Plaintiff. (Compl. ¶ 3, 41). Though Defendant signed the agreement with Plaintiff on behalf of HR4, courts "do not impute a corporation's forum contacts to each of the corporation's employees" for the purposes of personal jurisdiction. *Glob. Commodities*, 972 F.3d at 1109. The Ninth Circuit has explained that, although a plaintiff's status as a corporate officer does not foreclose personal jurisdiction over them, "their status also does not guarantee it." *Id.* "Personal

jurisdiction over an individual who acts as an agent of a third party must be assessed on the individual's actions alone." *Id.*

Again, Defendant's contacts with Nevada arising out of the contract are not sufficient for the Court to find that he purposefully availed himself of Nevada. The existence of a contract with a Nevada-based company that Defendant signed in New Jersey on behalf of HR4 does not establish purposeful availment. *See Boschetto*, 539 F.3d at 1017 (stating "we are guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction."). Neither does the fact that Plaintiff fulfilled its obligations under the JV Agreement and communicated with Defendant virtually while Plaintiff's employees were in Nevada. *See Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) ("[T]he fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract."); *see also Davis*, 71 F.4th at 1165 (noting that "remote actions taken to service a contract in the forum state seldom lead to purposeful availment by themselves") (citation omitted). And again, Defendant did not physically enter Nevada during the course of the contractual relationship to which Defendant was not a party. (Reynolds Decl. ¶¶ 33–34).

In *Picot*, the Ninth Circuit concluded there was no personal jurisdiction in California over a defendant who was party to a disputed oral agreement and who, pursuant to responsibilities under the agreement, visited the state two times, for about two weeks each, to assist the plaintiffs with marketing presentations. 780 F.3d at 1213. Given that holding, it is hard to imagine how a nonparty to an agreement who never visited the forum state, and whose own responsibilities were not tied to the forum except through Plaintiff, could be subject to personal jurisdiction there. *See id.*; *Walden*, 571 U.S. at 286 ("To be sure, a defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing

alone, is an insufficient basis for jurisdiction.").  Therefore, the Court finds that Plaintiff has not established that Defendant purposefully availed himself to Nevada such that the Court has specific jurisdiction over him.

### 2.  Purposeful Direction

The purposeful direction test, based on *Calder v. Jones*, 465 U.S. 783 (1984), requires Plaintiff to establish that Defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Washington Shoe Co v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)).  If these elements are met, a court can exercise jurisdiction "even if the defendant never set foot in the forum state." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022).  An action may be directed at a forum state even if it occurred elsewhere. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Plaintiff argues that a "jurisdictionally sufficient amount of harm" occurred because Defendant knew that Plaintiff would experience harm in the forum state, and that is sufficient to establish purposeful direction. (Resp. 15:10–22) (citing *Yahoo!*, 433 F.3d at 1206–07).  But as the Supreme Court clarified in *Walden*, rather than assessing the defendant's contacts with the plaintiff, the effects test is satisfied when "intentional conduct by the defendant . . . creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286.  A plaintiff's connection with the forum, and defendant's knowledge of such a connection, is not sufficient to establish purposeful direction. *Id.* at 289; *see also Janus v. Freeman*, 840 F.App'x 928, 930 (9th Cir. 2020) ("In *Walden*, the Court expressly rejected the view that *Calder*'s effects test is satisfied merely by the defendant's commission of an intentional tort that is aimed at a person known to be a resident of the forum state.").  Plaintiff has not identified any additional activities sufficient to establish that Defendant expressly aimed conduct at Nevada.  Because the only

basis for the inference that Defendant expressly aimed his conduct at this jurisdiction is that he intended to cause an injury to Plaintiff, there is nothing to suggest this lawsuit is "tethered to Nevada in any meaningful way." *Walden*, 571 U.S. at 290; *see also Picot*, 780 F.3d at 1215 (declining to conclude defendant expressly aimed his conduct at California after noting that the plaintiff's "injury [was] entirely personal to him and would follow him wherever he might choose to live or travel"). Plaintiff has therefore not established that Defendant expressly aimed his intentional acts at Nevada. Without express aim, Plaintiff cannot meet the *Calder* effects test and thus cannot establish that Defendant purposefully directed his actions at Nevada.

Because neither the purposeful availment nor purposeful direction tests are satisfied, Plaintiff has not met its burden of establishing the first prong of the specific jurisdiction test. The Court therefore does not address the remaining two prongs. *See Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."). Accordingly, the Court GRANTS Defendant's Motion to Dismiss for lack of personal jurisdiction and DENIES the Motion to Compel Arbitration as moot.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF Nos. 23, 24), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Arbitration, (ECF Nos. 4, 6), is **DENIED as moot**.

The Court kindly directs the Clerk of Court to close the case.

**DATED** this ___7___ day of March, 2025.

_____
Gloria M. Navarro, Chief Judge
United States District Court